IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02965-NYW

GABRIEL MARRERO VELEZ,[1]

        Plaintiff,

v.

CAROLYN W. COLVIN,

        Defendant.

---

MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Nina Y. Wang

    This action comes before the court pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33 for review of the Commissioner of Social Security's ("Commissioner" or "Secretary") final decision denying Plaintiff, Gabriel Marrero Velez's, application for Disability Insurance Benefits ("DIB"). Pursuant to the Order of Reference dated July 9, 2015 [#17], this civil action was referred to the Magistrate Judge "for all purposes" pursuant to the Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges and Title 28 U.S.C. § 636(c). The court has carefully considered the Complaint filed October 31, 2014 [#1], Defendant's Answer filed January 6, 2015 [#7], Plaintiff's Opening Brief filed March 9, 2015 [#11], Defendant's Response Brief filed April 7, 2015 [#12], Plaintiff's Reply Brief filed April 23, 2015 [#13], the entire case file, the administrative record, and applicable case law. For the following reasons, I respectfully REVERSE AND REMAND the Commissioner's decision.

---

[1] In the first docket entry, Plaintiff's name is reflected as Marrero Velez Gabriel. *See* [#1]. Plaintiff's name is in fact Gabriel Marrero Velez. *See, e.g.*, [#8-1 at 1].

## PROCEDURAL HISTORY

On September 8, 2012, Mr. Velez filed an application for DIB under Title II of the Act. *See* [#15-5 at 207-209; #15-2 at 48].[2] Plaintiff alleges he became disabled on September 19, 2011, at the age of 54, following an injury that occurred at his job when he was loading and unloading asphalt from a truck. [#8-2 at 46, #8-5 at 145, #8-7 at 258]. His claim was initially denied on April 11, 2013, and he filed a written request for a hearing on April 24, 2013. [#8-3 at 74-84, #8-2 at 28]. On February 26, 2014, Plaintiff and his counsel appeared for a hearing before Administrative Law Judge Patricia E. Hartman ("ALJ").

At the hearing, Plaintiff testified that he had last worked at an auto shop as a lot attender. In that position, he detailed cars, was involved in maintenance work, and helped keep the yard clean. [#8-2 at 48-49]. The maximum amount of weight he lifted as a lot attender was approximately sixty pounds. [*Id.* at 49]. Prior to that job, he worked at Sprouts grocery store in maintenance, and lifted at most approximately fifty pounds. [*Id.*] Prior to working at Sprouts, Plaintiff was an assembly technician at Aqua-Hot Heating and helped assemble water heating tanks. He would lift up to eighty pounds in that position. [*Id.* at 50]. Plaintiff's employment history also included a stocker at Walmart, a dish washer at Arkansas Valley Regional Medical Center, and a laborer. [*Id.* at 50-51]. Plaintiff has a seventh-grade education and he testified that he is not able to read. He did not recall ever taking Special Education classes. [*Id.* at 48].

---

[2] The court uses this designation to refer to the Electronic Court Filing system ("ECF") document number attached to the Administrative Record and the page number of the Administrative Record as it was filed by the Parties. Plaintiff's citations and Defendant's citations similarly refer to the page number of the Administrative Record, or, where applicable, the page number of a brief. *See, e.g.,* [#11 at 2; #12 at 2].

Plaintiff testified that he was in significant pain resulting from back issues and that he suffered from depression in large part from the inability to work. [#8-2 at 52]. He had relied on shots and painkillers, which he stated helped with the pain for a few months. At the time of the hearing, he was taking Gabapentin and Vicodin daily for his pain, and using a cane. [*Id.* at 52-54]. Plaintiff was also taking medication for his depression, which he said helped, and seeing a psychiatrist monthly, although he testified to having suicidal thoughts. [*Id.* at 55, 64]. Plaintiff explained that he felt pain in the middle of his back and through his tailbone that affected the right side of his body and his right leg. [*Id.* at 61]. He stated that he felt this pain constantly. [*Id.*] He also experienced constant pain in his right shoulder and right hand, which he described as locking, "like all my joints from my elbows and my shoulders, they lock up." [*Id.* at 64]. The pain worsened when he was "up and moving around," he would then "have to be still, sit down and…I can't do no lifting." [*Id.* at 55]. He was able to sit for forty-five minutes to an hour, stand for approximately two hours, walk for approximately forty-five minutes, and lift between five and ten pounds. [*Id.* at 55-56]. He stated that his medication helped his pain.

Mr. Velez further testified that he struggles with memory loss, concentration, and decision-making, and incurs panic attacks "[m]ostly all the time." [*Id.* at 56]. During a typical day, Plaintiff will "relax a lot…go to sleep…be in bed most of the time off and on," and he has difficulty sleeping at night. [*Id.* at 56-57]. Mr. Velez testified that he does not fix meals, load laundry, remove the trash, or pay bills; however he is able to appropriately groom himself, he helps wash dishes "[o]nce in awhile [sic]," and he vacuums daily. [*Id.* at 57]. Once or twice a month he visits the grocery store with his wife. Plaintiff has not attended church since his injury, does not visit other people, and does not go to see movies or eat out. [*Id.* at 58]. Also since his

injury he has stopped fishing and playing the guitar. [*Id.*] He leaves the house for a walk about once a month and enjoys watching television. [*Id.* at 58, 64].

Finally, Robert Schmidt testified as a vocational expert ("VE"). The ALJ first questioned whether a person with the following restrictions could perform any of Mr. Velez's previous jobs: one who is restricted to medium work, who can frequently reach overhead, occasionally climb ramps and stairs, cannot climb ladders and scaffolds, can occasionally stoop, kneel, crouch, and crawl, cannot work at unprotected heights, cannot use vibrating tools, and who would be limited to a maximum specific vocational preparation ("SVP") of 4.[3] [#8-2 at 67-68]. The VE testified that such person could work as a lot attendant, auto detailer, assembler, and kitchen helper. [#8-2 at 68]. The ALJ then asked if the hypothetical individual could perform these jobs if he could not read English, and the VE responded he could. [#8-2 at 68]. The VE further testified that occupations of housekeeping/cleaner and hand packager were likewise available to a person with these limitations. [*Id.*] The ALJ posed a second hypothetical question in which the individual was similarly restricted and could perform only light work. The VE testified that such a person could work as an assembler, a housekeeping/cleaner, a fast food employee, and a price marker. [#8-2 at 68-69]. In response to questions posed by Plaintiff's attorney, the VE testified that the same hypothetical individual who was additionally restricted to only occasional use of his right, dominant hand, would not be able to perform any of the jobs previously identified. [#8-2 at 69-70]. And, all previously mentioned jobs would be eliminated if the individual in the second

---

[3] SVP refers to the "time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" *Vigil v. Colvin*, 805 F.3d 1199, 1201 n.2 (10th Cir. 2015) (citing Dictionary of Occupational Titles, App. C, Sec. II (4th ed., revised 1991); 1991 WL 688702 (G.P.O.). The higher the SVP level, the longer time is needed to acquire the skills necessary to perform the job. Jeffrey S. Wolfe and Lisa B. Proszek, SOCIAL SECURITY DISABILITY AND THE LEGAL PROFESSION 163 (Fig. 10-8) (2003). SVP level 4 is associated with semi-skilled work. *Id.* (Fig. 10-9).

hypothetical was limited to standing only one hour at a time and walking only one hour at a time "for a total of two to three hours either standing or walking during the day." [#8-2 at 70].

The ALJ denied Mr. Velez's application in a written decision issued March 31, 2014, concluding that Mr. Velez was not disabled. [#8-2 at 25-37]. Plaintiff requested review of the ALJ's decision, which the Appeals Council denied on August 28, 2014. [#8-2 at 1]. The decision of the ALJ then became the final decision of the Commissioner. 20 C.F.R. § 404.981; *Nielson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). Plaintiff filed this action on October 31, 2014. The court has jurisdiction to review the final decision of the Commissioner. 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). The court may not reverse an ALJ simply because she may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). Moreover, the court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Massanari*, 271 F.3d 1256, 1260 (10th Cir. 2001), *as amended on denial of reh'g* (April 5, 2002). *See also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence

does not prevent an administrative agency's findings from being supported by substantial evidence.") (internal quotation marks and citation omitted). However, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted). Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

**I.   The ALJ's Decision**

An individual is eligible for DIB benefits under the Act if he is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy…." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002). Additionally, the claimant must prove he was disabled prior to his date last insured. *Flaherty*, 515 F.3d at 1069.

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. 20 C.F.R. § 404.1520(a)(4)(v). *See also Williams v.*

*Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750. Step one determines whether the claimant is engaged in substantial gainful activity; if so, disability benefits are denied. *Id.* Step two considers "whether the claimant has a medically severe impairment or combination of impairments," as governed by the Secretary's severity regulations. *Id.*; *see also* 20 C.F.R. § 404.1520(e). If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, however, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three. *Williams*, 844 F.2d at 750. Step three "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity," pursuant to 20 C.F.R. § 404.1520(d). *Id.* At step four of the evaluation process, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which defines what the claimant is still "functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751. The ALJ compares the RFC to the claimant's past relevant work to determine whether the claimant can resume such work. *See Barnes v. Colvin*, No. 14-1341, 2015 WL 3775669, at *2 (10th Cir. June 18, 2015) (internal quotation marks omitted) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (noting that the step-four analysis includes three phases: (1) "evaluat[ing] a claimant's physical and mental [RFC]"; (2) "determin[ing] the physical and mental demands of the claimant's past relevant work"; and (3) assessing "whether the claimant has the ability to meet the job demands found in phase two despite the [RFC] found

in phase one.")). "The claimant bears the burden of proof through step four of the analysis." *Neilson*, 992 F.2d at 1120.

At step five, the burden shifts to the Commissioner to show that a claimant can perform work that exists in the national economy, taking into account the claimant's RFC, age, education, and work experience. *Neilson*, 992 F.2d at 1120.

> . . . A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability. The decision maker first determines the type of work, based on physical exertion (strength) requirements, that the claimant has the RFC to perform. In this context, work existing in the economy is classified as sedentary, light, medium, heavy, and very heavy. To determine the claimant's "RFC category," the decision maker assesses a claimant's physical abilities and, consequently, takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work). . . .
>
> If a conclusion of "not disabled" results, this means that a significant number of jobs exist in the national economy for which the claimant is still exertionally capable of performing. However, . . . [t]he decision maker must then consider all relevant facts to determine whether claimant's work capability is further diminished in terms of jobs contraindicated by nonexertional limitations.
> …
>
> Nonexertional limitations may include or stem from sensory impairments; epilepsy; mental impairments, such as the inability to understand, to carry out and remember instructions, and to respond appropriately in a work setting; postural and manipulative disabilities; psychiatric disorders; chronic alcoholism; drug dependence; dizziness; and pain….

*Williams*, 844 F.2d at 751-52. The Commissioner may rely upon the testimony of a vocational expert to satisfy his burden at step five, so long as the question posed to the vocational expert accurately portrays Plaintiff's limitations as supported by the record. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000); *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992).

The ALJ first determined that Mr. Velez was insured for disability through December 31, 2016. Next, following the five-step evaluation process, the ALJ determined that Mr. Velez: (1)

had not engaged in substantial gainful activity since the alleged onset date of September 19, 2011; (2) had severe impairments of "degenerative disc disease L3/4 with displacement of the nerve root and annular tear L4/5, osteoarthritis, depression, anxiety, and marijuana abuse"; and (3) did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Title 20, Chapter III, Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). At step four, the ALJ found that Plaintiff had residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b): "[h]e can frequently reach overhead, stoop, kneel, crouch, and crawl"; "[h]e can occasionally climb ramps or stairs but cannot climb ladders or scaffolds"; "[h]e cannot work at unprotected heights or with vibrating tools"; "[t]he claimant is limited to work at a maximum of SVP 4, as defined by the regulations"; and "[h]e cannot read English." [#8-2 at 32]. The ALJ further found that Mr. Velez was capable of performing his past job as an assembler, because that position "does not require the performance of work-related activities precluded by the claimant's [RFC]." [#8-2 at 35].

Mr. Velez asserts two arguments in objection to the ALJ's decision. First, Plaintiff contends that the ALJ did not afford proper weight to the opinions of his treating physicians. [#11]. Second, Mr. Velez argues that the ALJ's determination of Plaintiff's credibility with regard to his pain and limitations is not supported by substantial evidence. [*Id.*].

## II.    ALJ's Evaluation of Treating Physician's Opinions

Mr. Velez argues that the ALJ would have found him to be disabled if she had afforded controlling weight to the restrictions identified by his treating physicians, Morris Askenazi, M.D. and Paige LeBlanc, P.A. [#11 at 3]. Defendant responds that the ALJ's weighing of these

opinions "as to Plaintiff's physical limitations was reasonable, supported by substantial evidence, and legally sound." [#12 at 11].

### A. Applicable Law

The RFC assessment must consider and address medical source opinions. The opinion of a treating physician is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing Social Security Ruling ("SSR") 96–2p, 1996 WL 374188, at *2). If the ALJ finds that the opinion is well-supported, she must then confirm that the opinion is consistent with other substantial evidence in the record. *Id.* If the opinion is either not well-supported or not consistent with the evidence, it is not entitled to controlling weight. *Id. See also Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (citation omitted).

Treating source medical opinions are nonetheless entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527. *Watkins*, 350 F.3d at 1300 (quoting SSR 96–2p, 1996 WL 374188, at *4). If the ALJ does not attribute controlling weight to the treating source's opinion, she should demonstrate her consideration of the following:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). After considering these factors, the ALJ must provide good reasons in her decision for the weight she ultimately assigns the treating source's opinion. *Watkins*, 350 F.3d at 1301 (citing 20 C.F.R. § 404.1527(d)(2)).

An ALJ may reject medical opinions in the record and reach her own conclusion as to a claimant's RFC, so long as that conclusion is based on substantial evidence. *See Boss v. Barnhart*, 67 F. A'ppx 539, 542 (10th Cir. 2003) ("When a treating [source's] opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other [source's] reports to see if they outweigh the treating [source's] report, not the other way around") (citation omitted). *See also Doyal*, 331 F.3d at 762 ("[T]he assumption that the opinions of a treating physician warrant greater credit than the opinions of [other experts] may make scant sense when, for example, the relationship between the claimant and the treating physician has been of short duration…") (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832, 123 S.Ct. 1965 (2003)). The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (citing 20 C.F.R. §§ 404.1527(d)(1), (2) and 416.927(1), (2)).

B. Application

The ALJ designated Dr. Askenazi and Ms. LeBlanc as Plaintiff's treating providers. [#8-2 at 34]. As an initial matter, the court notes that Ms. LeBlanc, as a physician's assistant, is not identified as an acceptable source of medical evidence under the social security regulations. 20 C.F.R. §§ 404.1513(a), (d)(1). *See also Weaver v. Astrue*, 353 F. A'ppx 151, 154-55 (10th Cir. 2009) ("a physician's assistant…is not an 'acceptable medical source'") (citation omitted). "Only 'acceptable medical sources' can establish the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight." *Weaver*, 353 F. A'ppx at 155 (quoting SSR 06–03p, 2006 WL 2329939 at *2 (Aug. 9, 2006); citing *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir.

2007)). Accordingly, the ALJ designated Ms. LeBlanc as a treating provider to Plaintiff's benefit, and was not required to give her opinion controlling weight.

Ms. LeBlanc completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) ("Medical Source Statement") on January 29, 2014, finding that Plaintiff could only occasionally lift and carry between ten and fifty pounds, sit between one and two hours without interruption, stand only one hour without interruption, and walk between one and two hours without interruption. [#8-9 at 406-407]. She did not identify any medical or clinical findings to support this assessment. [*Id.*] *See* 20 C.F.R. 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Ms. LeBlanc also found that Plaintiff could never climb stairs or scaffolds, balance, or stoop, and could only occasionally climb stairs and ramps, kneel, crouch, and crawl. [#8-9 at 409]. For support she referenced only Plaintiff's own back and knee concerns. [*Id.*] Finally, she found that Plaintiff could only occasionally reach overhead or otherwise with his right hand, and could only occasionally handle, finger, feel, and push or pull with his right hand. [*Id.* at 408]. For support, she referenced an x-ray of Plaintiff's right shoulder, which Plaintiff asserts exhibited "mild glenohumeral and AC joint degenerative joint disease." [*Id.*, #11 at 4]. *See also* [*id.* at 374 (referring to an x-ray of a pinched nerve in Plaintiff's spine)]. Ms. LeBlanc then opined that Plaintiff is able to shop, travel without assistance, ambulate without assistance other than the use of one cane, walk one block at a reasonable pace, use public transportation, climb "a few steps" at a reasonable pace, prepare meals and feed himself, care for his personal hygiene, and sort and

12

handle papers and files. [*Id.* at 411].   Dr. Askenazi endorsed Ms. LeBlanc's opinion by signing the Medical Source Statement. [*Id.* at 414-419].

The ALJ attributed limited weight to these opinions on the basis that they were "not consistent with the record as a whole, the record does not support the manipulative restrictions, and the limits assessed due to mental symptoms are inconsistent." [#8-2 at 34]. In explanation, she relied on Plaintiff's treating records and his testimony at the hearing. *See* [#8-2 at 33-34]. Specifically, the ALJ noted that Plaintiff had a demonstrated ability to "perform numerous tasks including attending to his personal care needs, performing household duties, watching TV, going outside, shopping, driving, and spending time with others." [#8-2 at 33]. She cited a Function Report from February 1, 2013, in which Plaintiff represented that he was always in pain and that a typical day included drinking coffee, watching television, walking outside to smoke a cigarette, using the microwave to warm meals his wife had prepared, taking a shower, napping, watching more television, drinking more coffee, eating dinner, and watching television before bed. [#8-6 at 184-185]. He further represented that he washes dishes and he vacuums for forty-five minutes to an hour once or twice a week, walks outside every day to smoke, drives a car, rides in a car, and visits a store once a week for cigarettes. [#8-6 at 186-187]. He stated he had difficulty squatting, bending, reaching, kneeling, and climbing stairs. [#8-6 at 189].

The ALJ also cited Plaintiff's treating records concerning his history of back and joint problems, noting that he has disc protrusion at L3/4 with displacement of the nerve root and an annular tear at L4/5, he had received pain management and tolerated Gabapentin well, and he had received injections with some relief. [#8-2 at 33]. The records demonstrate that Plaintiff's examinations during the period in question were "relatively within normal limits," and while Plaintiff experienced some decreased range of motion, he had maintained a normal gait, full

muscle strength, had no tenderness, and walked without an assistive device. [*Id.*]  Indeed, Mr. Velez's progress notes dated February 18, 2012 (five months after his work accident) through August 9, 2012 and May 2013 through August 2013 regarding his lumbar pain support the ALJ's findings.  *See* [#8-7 at 227-258, 232 ("At this juncture, it has been counseled to the patient that we are dealing with a subjective complaint without a significant amount of objective findings. The patient, therefore, is to continue to follow through with an active exercise program on an individual basis.")].  *See also* [#8-9 at 368-385 ("Vertebral bodies are normal in height and overall alignment," with no thecal sac or foraminal stenosis as to L1-L2, small right paracentral L2-L3 disc protrusion, shallow broad L3-L4 disc protrusion without nerve root displacement and without stenosis of the thecal sac overall)].

However, in assessing Plaintiff's RFC, the ALJ did not specifically address the concerns regarding Plaintiff's joints and his right shoulder in particular.  The court recognizes that an ALJ is not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  The record must demonstrate only that the ALJ considered all of the evidence, *id.*; and the ALJ here considered at step three whether Plaintiff's joint issues met a listing, and she "paid particular attention to listing 1.02 for major dysfunction of a joint," and found that "the evidence does not show that the claimant has the degree of difficulty in performing fine and gross movements as defined in 1.00B2c or the degree of difficulty in ambulating as defined in 1.00B2b." [#8-2 at 31].  Nonetheless, "'[a]n ALJ is not entitled to pick and choose through an uncontroverted medical opinion, taking only the parts that are favorable to a finding of nondisability.'"  *Chapo v. Astrue*, 682 F.3d 1285, 1288, 1292 (10th Cir. 2012) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)).

It does not appear from the record before the court that the ALJ considered any limitations to Mr. Velez's right shoulder, or at least, did not articulate why, after considering such limitation, that it was not material to her determination. Significantly, the ALJ determined in the RFC assessment that Plaintiff can frequently reach overhead and could perform his past work as an assembler, [#8-2 at 32, 36], which one might assume is a position that requires finger and hand manipulation. It is clear that the ALJ accepted part of the Medical Source Statement in her RFC assessment, but she gave no specific reason for rejecting the manipulative restrictions, stating only that "[o]verall, the claimant's treatment notes, physical examinations, diagnostic testing, consultative report, subjective complaints, and his activities of daily living suggest that his physical impairments are not as severe as alleged." [#8-2 at 33]. In so concluding, she reviewed Plaintiff's records of back issues, as noted above, but did not address or inquire into the x-ray of Plaintiff's shoulder, upon which Dr. Askenazi and Ms. LeBlanc relied in finding that Mr. Velez could only occasionally reach with his right hand, and could only occasionally use that hand to handle, finger, feel, and push or pull. [#8-9 at 408, 374]. Nor did she demonstrate in her analysis any consideration of Plaintiff's testimony from the hearing that he, "can't hardly use [his right hand] a lot because it started like locking. My bones start locking, like all my joints from my elbows and my shoulder, they lock up." [#8-2 at 64]. *See* 20 C.F.R. § 404.1520(e) ("we will assess and make a finding about your residual functional capacity based on all the relevant medical and other evidence in your case record, as explained in § 404.1545); 20 C.F.R. § 404.1545(a)(3) ("[w]e will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' …when we assess your residual functional capacity.").

With regard to Plaintiff's activities of daily living, the ALJ did not explain how those activities contradicted the testimony and opinion regarding Plaintiff's upper extremity limitations. *Cf. Overton v. Astrue*, No. 12–cv–00553–WYD, 2013 WL 950866, at *2-3 (D. Colo. Mar. 11, 2013) ("I also note that while the Commissioner points to Plaintiff's activities of daily living as supporting a need only to take normal breaks, the record is devoid of any information about how many breaks Plaintiff takes while performing these activities,"…"the fact that Plaintiff performs daily activities does not address what impact a gout attack may have on manipulative activities."). For instance, the ALJ did not examine how the daily activities performed by Mr. Velez demonstrated his ability to reach overhead or manipulate his fingers. An ALJ cannot discount a portion of a physician's limitations, "with no explanation at all as to why one part of his opinion was creditable and the rest was not." *Chapo*, 682 F.3d at 1292. The ALJ did not specify, and Defendant has not cited in briefing, the medical evidence that contravenes the x-ray that Dr. Askenazi and Ms. LeBlanc relied upon.[4] *See* [#12 at 4-6].

Additionally, with respect to Plaintiff's complaints of shoulder and joint pain, the ALJ did not demonstrate her consideration of the factors listed above in determining what weight to attribute to the Medical Source Statement. *White v. Barnhart*, 287 F.3d 903, 907-08 (10th Cir.

---

[4] Defendant contends, "the ALJ correctly noted that, although Plaintiff had a history of pain in his back and other joints, his physical examinations had been relatively normal and recent imaging showed minimal findings." [#12 at 12]. However, Defendant's citations in support refer only to records regarding progress with Plaintiff's lumbar issues; they do not reflect treatment of Plaintiff's shoulder and joints. *See* [#8-9 at 368-369, 404]. Defendant also contends, "there are no records evidencing the x-ray upon which Dr. Askenazi purportedly based his opinion about Plaintiff's alleged shoulder problem," and "there is no record of any such shoulder problems/symptoms in [Plaintiff's] long treatment history with Dr. Hnida." [#12 at 14]. However, this argument only underscores the need for further proceedings during which the ALJ may develop the record regarding the joint and shoulder issues. Furthermore, I cannot consider a post hoc argument to justify what the ALJ did not specifically address. *See Haga*, 482 F.3d at 1207–08 ("this court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself").

2001) ("In addition to its consistency with other evidence, we examine a treating physician's opinion with several factors in mind: the length of the treatment relationship, the frequency of examination, and the extent to which the opinion is supported by objective medical evidence") (citing 20 C.F.R. § 404.1527(d)(2)).  An ALJ properly declines to give controlling weight to a treating provider when the physician's opinion appears to merely recite the claimant's complaints, the provider's notes do not appear to be based on an examination, and the notes provide little analysis of the claimant's physical limitations.  *See Raymond v. Astrue*, 621 F.3d 1269, 1772 (10th Cir. 2009).  The ALJ must nonetheless "articulate specific, legitimate reasons for his decision."  *Id.* (quoting *Cowan v. Astrue,* 552 F.3d 1182, 1189 (10th Cir. 2008)).  The Medical Source Statement does not by itself indicate the nature or duration of the treating relationship between Dr. Askenazi and Plaintiff, or the extent to which he examined Plaintiff, if at all, before endorsing the report.  However, the ALJ did not mention these as bases for the amount of weight she gave the opinion.

I find that the ALJ failed to sufficiently explain her finding that the manipulative restrictions set forth in the Medical Source Statement were not well-supported and were inconsistent with the record.  Accordingly, I am unable to give meaningful review to whether the designation of limited weight is supported by substantial evidence.  *See Drapeau*, 255 F.3d at 1213-14 ("when, as here, an ALJ does not provide any explanation for rejecting medical evidence, we cannot meaningfully review the ALJ's determination") (citation omitted).  An ALJ's failure to "provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005).  I thus remand this matter for further proceedings for the ALJ to develop the record regarding the extent to which Plaintiff is impaired, if at all, by his shoulder and joint

17

issues. I also note that the ALJ may find it necessary to contact Dr. Askenazi to further develop the record regarding objective medical findings related to Plaintiff's complaints of joint and shoulder pain. *See* 20 C.F.R. § 404.1512(e). *See also Saum v. Astrue*, No. 09–cv–02091–REB, 2010 WL 3874387, at *4 (D. Colo. Sep. 29, 2010) ("it is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the 'evidence' the ALJ 'receive[s] from [the claimant's] treating physician' that triggers the duty") (quoting *White*, 287 F.3d at 908)).

### III.  Determination of Credibility

As to Plaintiff's argument that the ALJ's determination of his credibility was not supported by substantial evidence, "[b]efore the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain." *Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir. 1993) (citations omitted). Indeed, "[c]redibility determinations are peculiarly the province of the finder of fact," and "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir. 2005) (citations omitted). Because the error identified above requires remand, and may impact the ALJ's assessment of Plaintiff's credibility with respect to his pain, the court need not address at this time argument challenging the ALJ's determination of Plaintiff's credibility. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected the analysis as a whole, court declined to address other issues raised on appeal). *See also Watkins v. Barnhart*, 350 at 1299 ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## CONCLUSION

For the reasons set forth herein, the court hereby REVERSES AND REMANDS, for further consideration in the RFC assessment of the extent to which Mr. Velez is impaired, if at all, by complications with his joints and right shoulder.


DATED: March 11, 2016                              BY THE COURT:


                                                  s/ Nina Y. Wang         
                                                Nina Y. Wang
                                                United States Magistrate Judge